May it please the court. My name is Robert Powell. I'm the attorney for the plaintiff Presley Hardwick. I have a quick request that I'll understand if it's declined. Ms. Hardwick is a law student now at Chapman University and I wondered if I might allow her to join me at the table. Sure. And I want to say her parents did not pay any money in an unlawful fashion to get her into Chapman University. Let's just turn to the case. Thank you. Having met with this court many times I want to just jump to one of the arguments. I'm not going to address the arguments about how the trial worked out after a motion for summary adjudication unless you ask me to. I want to point to the appellant's excerpt of Record Volume 6, page 1534. That is from the jury instructions and it is partially quoted in the defendant's brief, I believe on their page 15. If you read that, what you will find is that the jury had to make all of the following findings, not just the one that's cited on page 15 of their brief. It says at the very beginning of the jury instruction that there's a claim that Marcy Vreekin and the other defendants violated Ms. Fogarty Hardwick's rights and that they must prove all of the following. And one of those, the very first one, they can't even get to the third one that has the word privacy in it, which is I believe the only mention of privacy you will find in the jury instructions. They had to get past the intentional acts causing the removal and the detention of the plaintiff's children. So I think they're trying to create, there's an ambiguity argument, but there is none. This court in Hardwick 1 didn't see that ambiguity. This court itself cited the basis of the case was the lying and the perjury and the fabrication of evidence and the withholding of exculpatory evidence. In my opinion, we have briefed this fully. We have shown the court that collateral estoppel under California law would require this very decision, that the California Court of Appeal saw it this way, that it was a case about lying and deception. I wish to say to the court that at that time in history, we didn't have quite the full development of this perjury and lying and juvenile dependency cases that we have now. Hardwick 1, in fact, fleshed it out even further. But it wasn't until last year that California itself came up with a jury instruction that directly addresses this kind of conduct. But there's no smoke and mirrors here as to what happened, as to what the complaint was in both cases, what the events were. And when the facts are the same and the facts are decided, it doesn't matter what your cause of action or claim for relief is after. An example I would like to give is if a polluter was pouring some hazardous substance into a creek and a local governing authority brought suit against them for some violation of their local ordinances. Later, a landowner down the road might bring a claim because his dumping that hazardous substance into that water killed his cattle. Well, those are going to be two completely different claims for relief. But the fact was established in the first case that he poured the hazardous substance into the creek, the second plaintiff is going to have the benefit of collateral estoppel. What was the foundational constitutional claim that you were seeking to vindicate in this case? The violation of her Fourth Amendment and familial association rights. The law in Wallace v. Spencer talks about them being subsumed, but that doesn't mean that the 14th doesn't exist for my client. Is that right that you just articulated? Is it the same right that the parents had when they litigated the prior case? Yes, familial association right. As we explained in the brief, it's a reciprocal right. It runs both ways. It kind of makes sense that it would. So, yes, it is the same right. The parents have a little bit. Their right is a little bit different, isn't it? Well, there's this phrase in the term of care, custody, and control. But in order to have a right of care, custody, and control, you have to have someone who reaps the benefit of that care, custody, and control, and that's going to be your children. So it is a reciprocal right, and the law is pretty, we think, clear on that. You can't do one without the other. The fact that the child is physically seized under our long precedent of law is, of course, a Fourth Amendment violation. They are literally taken somewhere, and they're where they don't want to be, and they can't go anywhere else. But that doesn't change the fact that they're also separated from their parent. The same parent that has rights under Wallace v. Spencer to be at their medical appointments, make decisions. Even in the juvenile dependency law system, a parent retains until a court takes it away, even if they've taken the child. They retain that right to decide what's going to happen with them medically. We didn't even get into that in our case, but there were rights like that that were also violated. So it's a reciprocal right. It's a very important right and has been long before we had laws being written on books. Wasn't the, okay, you've got to help me here. Maybe I'm not remembering it right, but I thought the jury instruction in the superior court told the jury that they could find in favor of the mom if the plaintiff proved A or B. Now, the B doesn't apply to our case now. So in theory, could the jury in the first case have found B, and therefore it's not necessary that they found A in the state court? Help me understand that piece of it. Okay. I don't know how quickly you can see 1534 of the defendant's or appellee's excerpts of record. It's in volume six, but that has the whole jury instruction. The preface to any of those propositions, the A, B, or C, as you used the term, they're one, two, three in the instruction, require that they must prove all of the following. So then I take you back to the fact that. You have a copy of that in hard copy right there. I can't find that, and it wouldn't require for me to leaf through 1,500 pages. Okay. All right. Here we go. This has the interleviations in it? Yeah, that's about the sloppiest jury instruction I've ever seen. All right. So the instruction says you have to find A or B, right? No. Okay. Is that right? That's sort of right. It says that you first have to find that by something that they did, their words or conduct, and I don't think anyone's disputing that that was the claim. Even this court understood in hard book one, that was the claim, lies, deceit. Okay. Well, I'm just asking about the instruction now. Right. The instruction says A or B, doesn't it? It does on the third element. Right. So A and B are not both ñ are they both rights that the child holds? What's A? Well, the child has ñ if your Fourth Amendment right has been ñ Well, what's A? Pardon me? What is A there, the A and the B? A is, I'll just quote it, I'm sorry, Marcy Vreekin and the other defendants. All right. So that's one. See, that requires, say, removal of the child from the parent's custody, right? Yes, that means. Which is a violation of the parent's right to have custody, right? And reciprocally. Wait a minute, wait a minute. The child has no right to custody. A right to be cared for by their parent? I don't think a child ñ there's no case that says the child has a right to custody. The child has a right to companionship. No. Okay. Right? So yes. But it's the parent who has a right to have custody of the children, minor children we're talking about, right? There's no doubt that parents have a right to have custody of children. Right. Unquestioned. And so if the jury finds that that right was violated, that's a violation of the parent's right. Is that correct? That's correct. Now, but that wouldn't necessarily mean that there was a violation of the child's right, if that's the only finding the jury made, does it? It's not the only finding that the jury made. I'm saying if that's the only finding the jury made, that that doesn't necessarily involve a violation of the child's right. And I'm telling you, yes, it does. Yes. How does the parents being deprived of the child's custody deprive the child of a constitutional right? Because it is the 14th Amendment's right of familial association. It is a reciprocal right. It is a reciprocal right. You have to have a child ñ But that doesn't answer my question. I say the child certainly has a right to companionship, just like the parent has a right to companionship, right? Correct. Reciprocal. But in addition to the right to companionship, the parent has a right to custody. Correct. There's no identical right on behalf of the child, is there? Not when phrased as the parent's right. Right. Well, that is part of the parent's constitutional right, under the constitutional right to custody, custody of minor children, right? Correct. So if that's the only violation that the jury found, then it didn't necessarily find a violation of the child's right, did it? It implicitly, much like your decision in Pike v. Hester, it implicitly found that the child's right had been violated. Both the child's Fourth Amendment right, which it owns separate and apart from the parent's rights, and you can't have ñ if I'm a single man, which I am at the moment, I don't have a familial association right. My children are all grown. I don't have a familial association right. But once I have a child, we are a family, and we have a familial association right, and we have set forth the case law on the reciprocity of those rights. For a moment there, Your Honor, I believe was ñ I don't want to say the term ñ buying into this Smith v. Montana argument, but as we pointed out, that was a derivative liability claim, and I submit to you it wasn't quite genuinely portrayed to you, and we attempted to address that fully in our brief. There is also the very simple fact that collateral estoppel is about issue preclusion, and that's kind of the other name for it right, and that has to do with factual events. The complaint in both cases was the same. The events in both cases are the same. The players in both cases are the same, with the exception of now it's Presley as the plaintiff. Once you decide that one of the defendants acted in a certain behavior, which is at least implied in the holdings of both the jury, the state appellate court, then you have major case for collateral estoppel where here that was all that we filed on, was a motion for summary adjudication for that conduct, that having lied to the court to achieve the separation of the child from the parent. And this court in Hardwick 1 saw it that way exactly. It's on page 17 of our brief, I believe, of our opening brief. Did you want to save some time for rebuttal? Yes. Apparently I have three minutes left. I would like to have that. Thank you. Good morning. Norm Watkins on behalf of the defendants. Feliz. May it please the court. I think the court has gone to the right issue, and that is the comparison of the instructions in this case and the original case. I've gone through I don't know how many boxes. I've studied this case from beginning to end. And just reading the two instructions points out in stark relief how these cases are not even close. The original case brought by this plaintiff's mother, the jury was told that in order for Deanna Fogarty Hardwick to succeed in her claim that the defendants, the same as the appellees here, violated her civil rights, she must prove all of the following. First, Marcy Vreegan and the other defendants intentionally, by her words or conduct, removed and or caused the removal and or detention of plaintiff's children from plaintiff's custody or otherwise interfered with her rights as a parent. Now, those are disjunctive thoughts. But moving on, that's element number one. Element number two, that such defendant was acting or purporting to act in the performance of her official duties. I think there's no question about that. Required finding number three, that defendant's conduct violated Ms. Fogarty Hardwick's right of familial association, including her right to the care and custody of her two minor children, Kendall and Presley Hardwick, or violated her right of privacy. Now, I'm going to ask the court to keep that in its mind, and now I'm going to read the burden of proof instruction in the case that was tried below. In order to prevail on her 1983 claims against the same defendants, the plaintiff must prove each of the following elements against each defendant by a preponderance of the evidence. One, the plaintiff was removed from her mother's custody on February 17, 2000, pursuant to the juvenile court order. Two, the defendant made misrepresentations or omissions that were deliberate falsehoods or demonstrated a reckless disregard for the truth. And three, that but for the dishonesty, there would not have been the juvenile court order removing the plaintiff from her mother's custody. In almost 30 years of litigation that this family has tragically been through, 20 plus for sure, this is the first time and only time any jury has been asked if my clients lied. Now, it's true that there are references and quoted language in the Court of Appeal opinion, in the California Court of Appeal opinion in the first case that seems to say that, does say that, without citation. That language has been picked up universally, and this is the first time any jury got to pass on the question and unanimously rejected the claims of the plaintiff. Now, there's no question that the jury in the mother's case was frankly asked only to decide if the defendants interfered with parental rights. That's what social workers do, rightly or wrongly. That's what they do. Whatever else can be said, and I'm not, that ship has sailed on that first case. But that's not this case. And the plaintiff is asking that this court imply that they must be liars, because that was what was intended to be proved below, notwithstanding these instructions. I think it's very clear that these are not the same cases. And although I didn't try the first case, I'm very familiar with that record. I'm familiar with this record, obviously. But unless the court has any questions, I'll save it. I do have one question. Yes. You read the words privacy, and I did look at the special verdict form in the state court. And it seemed to me that in the state court the plaintiff could win by showing either A or B, and B was right of privacy. That's correct. And then being violated. So let's, so if theoretically the jury could have said, okay, the right of privacy was violated, we don't have to make any other findings, plaintiff wins on that point. But in the federal case, there was no right of privacy does not figure into the instructions. Am I right about that or not? You are. You are correct. So that's one of your main points, isn't it, that there's no match, there's no necessary identity between the elements that were found by the state court jury versus what the federal jury had to find. That is correct. I mean, there's not even a similarity between what these juries were asked to do. Was it in the state court, was it a 1983 action? Yes. In fact, it started out, if I understand correctly, it started out as a 1983 action and a number of state claims. The courts, California courts, threw out all the state claims but allowed the civil rights claims to proceed. And that's what went to trial and that's what's been litigated. Thank you. Thank you very much. Thank you. What do you say to that point that I just heard, which is, that we just heard, that the jury in the first case could have won, but the privacy theory does not apply in the case that went to the federal jury. So what's your answer to that? I return to what is replete in the record, which is that, number one, all these claims are based on the exact same events. If you read the complaints of the two cases in the record, they are identical except for, if you will, from the viewpoint of the then six-year-old. But the facts are exactly the same. That was what was presented to the jury. That's what this court has previously found to be the gravamen of the case, was lies and deceptions and withholding of information that was exculpatory from the court to accomplish the, basically, dismemberment of a family. So, again, going to the finding of privacy or not finding, I go back to my example of a man pouring hazardous waste in a river. When you've had that factual determination, even if just implied, although I think it's a pretty strong implication when the state appellate court agrees, and it's in their opinion and it's in our brief, I think that you have established what you need to to now have your trial on damages because you've established the violation of your Fourth Amendment rights. I just was looking again at the reciprocity language in Smith for Judge Tashima's prior questioning about the reciprocal rights. They call it fibers. Wallace talks about the fiber of the family to be together. I think that the privacy argument is a red herring because there's not much left to cling to. Let's take your polluter example. Let's say that the environmental agency sues the polluter and says, okay, you dumped either chemical A or chemical B into the stream. The jury says government wins. So it's either A or B. And then later a farmer downstream says you dumped chemical B into the stream and killed my cattle. Why? Judge? That wouldn't be collateral estoppel because it could have been A that the jury found in the first case. You won't find B in the jury instructions. You won't find. It was in there. He just read it. I heard it. The word privacy. You will not find a single explication of privacy in the jury instructions. Above, below that citation, you will not find it. How about in the verdict form? I saw it myself. It's written that same way. But the point is we presume a jury. I saw it myself this morning. I agree. It says for violation of the right of privacy. I agree. But we presume a jury reads and understands the jury instructions. In the jury instructions, they could not have understood privacy because it isn't in there. There is a word on this scrawled jury instruction with someone threw in privacy. I'll never get to why somebody threw that in. I do know that there is a thread in the law that looks at possibly First Amendment privacy rights are implicated by these wrongful removals of children from parents. And it just hasn't grown to fruition. It just hasn't. But it's out there. There's two or three cases. Ponder it. In this case, it is this factual predicate that was determined by the jury in the first case. It's been reiterated by the state appellate court. That's been recognized, I will say, in something far more than dicta in Hardwick 1. That would inform this court that my client's familial association rights and her rights to be free from unreasonable seizure. When you say the jury in the first case found or focused on a factual predicate, what exactly was that factual predicate? That Vreken, Dworczyk, and the third defendant had lied to the court. They had lied to the court claiming that Deanna had said something to the children. That Deanna, the mother, who's also here, had interfered with visitation with the father. And that's exactly what the state appellate court said. No, that's what they did. They lied. They convinced the court based on lies. And the court has to presume, I submit, that the appellate court, the later body, doing the more thorough investigation of that record is the decision that needs to be given weight. And if you read their language quoted in our brief, it's very clear that they saw this as a violation of Ms. Fogarty-Hardwick's. What your argument amounts to, at least as far as the all-subs question is concerned, is the mention of privacy in the jury instruction was just pure surplusage. It indeed was surplusage because if you were a juror in that juror box or in your deliberation room, you wouldn't have been able to go back to your jury instruction and say, hey, what's that about? What's that about? What's that privacy about? Okay. Thank you, counsel. Thank you.
judges: Tashima, Paez, Alsup